United States Court of Appeals
Fifth Circuit

**F I L E D**

August 24, 2006

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 05-60424

(Summary Calendar)

---

MARTHA A. CHEATHAM; SANDRA R. GILBERT; JOY E. LADD; JOHN MCCOY;
SHERRY L. PARHAM; CAROL D. STEGALL; BETTY M. WELLS; JOHN R.
KITCH; DENISE PEOPLES; MIKEL ANTHONY; JOSEPH E. JOHNSTON,

    Plaintiffs - Appellants / Cross - Appellees

v.

ALLSTATE INSURANCE COMPANY,

    Defendant - Appellee / Cross - Appellant.

---

Appeals from the United States District Court
for the Southern District of Mississippi
No. 2:02-CV-893EEF-JCW

---

Before SMITH, GARZA, AND PRADO, Circuit Judges.

PER CURIAM:*

    Martha A. Cheatham, Sandra R. Gilbert, Joy E. Ladd, John McCoy, Sherry L. Parham, Carol D. Stegall, Betty M. Wells, John R. Kitch, Denise Peoples, Mikel Anthony, and Joseph E. Johnston (collectively, "Appellants") brought suit against their employer, Allstate Insurance Company ("Allstate"), for violations of the

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Age Discrimination Employment Act of 1967, 29 U.S.C. § 621, the Fair Labor Standard Act of 1938 ("FLSA"), 29 U.S.C. § 201, and for intentional infliction of emotional distress under Mississippi law. Appellants appeal from the district court's order granting Allstate's motion for summary judgment on all three claims. Allstate cross-appeals for costs under Federal Rule of Civil Procedure 54(d). For the following reasons, we AFFIRM the district court's grant of summary judgment on all three claims. Because the district court did not state its reasons in ordering each side to pay its own costs, as required by Federal Rule of Civil Procedure 54(d)(1), we VACATE and REMAND to the district court for a redetermination of costs.

I. Background

Appellants were managers, claim adjusters, and claims processors in Allstate's Jackson, Mississippi office. Allstate requires that its claims personnel document their claims-handling activities with regard to adjusting claims in the claim file, including all communications with insureds and claimants, interviews of witnesses, and negotiations with claimants and their attorneys. Among other things, accurate claim file records enable Allstate to confirm it has complied with state law and regulations.

In 1995, Allstate adopted a software system called the Claim Development System ("CDS"). Claims personnel used the system to

document their claims-handling activities and manually enter the dates on which those activities took place. In 1997, Allstate implemented an enhanced version of CDS that reflected a computer generated date in a "footnote," in addition to the manually entered "headnote" date. While the headnote date would reflect the date the activity took place, the footnote date would indicate the date the activity was recorded. Upon completion of an entry, the employee would press "enter," at which point the computer automatically inserts the current date at the bottom of the screen.

Allstate first learned that the computer-generated footnote date could be altered while it was preparing its defense in another lawsuit in Mississippi in spring 2001. During discovery, Allstate learned that a since-terminated Jackson office employee, Joan Vines, had learned of a way to alter the footnote by manually entering a footnote date and then prematurely turning off the computer before pressing the enter key. The manually entered footnote date would appear on the screen when rebooting the computer.[1] This process allowed employees to backdate entries.

After learning that the footnote could be altered, Allstate put together a multidisciplinary team to conduct a national audit

---

[1] Allstate terminated Vines after she admitted to altering footnote dates.

to determine if other employees were backdating the entries and to identify these employees and the affected files. During the investigation, which spanned from September 2001 to February 2002, the team determined that the problem centered in the Jackson, Mississippi office.[2]

In April and May 2002, Allstate conducted interviews with those employees who it determined had made the alterations. Cheatham, Gilbert, Kitch, Ladd, McCoy, Peoples, Parham, and Stegall admitted to making alterations. Anthony denied making the alterations, but could not offer an alternative explanation. Johnston admitted he had conversations with some Jackson office employees regarding the altering of electronic documents. Wells admitted that she had been shown the process for altering the date by Vines. Allstate concluded that Wells and Johnston, in their positions as managers, had knowledge that their employees were altering the footnote date and took no action to stop it.

Allstate's in-house counsel Judith Gaston recommended terminating Appellants for altering company documents, in

---

[2] Allstate identified that there were 6,736 alterations on 2,625 files in which an employee manipulated data in electronic documents. The audit revealed that Stegall had made 890 alterations on 382 files; Ladd had made 720 alterations on 278 files; Cheatham had made 454 alterations on 236 files; Parham had made 420 alterations on 156 files; McCoy had made 409 alterations on 170 files; Peoples had made 357 alterations on 199 files; Kitch had made 214 alterations on 129 files; Gilbert had made 65 alterations on 38 files; and Anthony had made 9 alterations on 7 files.

violation of the Allstate Code of Ethics, the P-CCSO Code of Ethics, and the Allstate Human Resources Policy Guide. These manuals forbid employees from altering company documents, including electronic documents, and threaten immediate termination of employees found to have falsified company documents. Allstate terminated Appellants on June 13 and 14, 2002. Those employees who were at work met individually with a local human resources representative at a hotel conference room, outside of which an armed security guard was present. Each Appellant was informed that he or she was being terminated for a violation of company policies, and each was not permitted to return to the office to collect his or her personal belongings at that time.

Appellants each filed charges of employment discrimination with the EEOC, pursuant to 29 U.S.C. § 626(d). Appealing from the district court's grant of summary judgment to Allstate, Appellants claim that (1) Allstate wrongfully terminated them based on their age, (2) they are entitled to overtime compensation benefits and damages due to Allstate's failure to pay those benefits, and (3) they are entitled to damages for intentional infliction of emotional distress ("IIED") as a result of the manner in which Allstate terminated them.

II. Discussion

We review the grant of a summary judgment motion de novo,

and apply the same standard as the district court. <u>Duffy v. Leading Edge Prods. Inc.</u>, 44 F.3d 308, 312 (5th Cir. 1995); FED. R. CIV. P. 56. We resolve any factual inferences in favor of Appellants, the nonmovants, and ask whether Allstate, the movant, is entitled to judgment as a matter of law. See <u>Degan v. Ford Motor Co.</u>, 869 F.2d 889, 892 (5th Cir. 1989). We consider each claim in turn.

A. <u>Age Discrimination in Employment Act</u>

Appellants challenge Allstate's reason for terminating them as pretext, and alternatively argue that age was a motivating factor behind their terminations. The burden shifting standard for claims of ADEA violations in the Fifth Circuit is well-settled. <u>See, e.g.</u>, <u>Meinecke v. H&R Block of Houston</u>, 66 F.3d 77, 83 (5th Cir. 1995). First, Appellants must state a prima facie case of age discrimination. <u>Id.</u> If they succeed, the burden shifts to Allstate to provide a legitimate, nondiscriminatory reason for terminating Appellants. <u>Id.</u> If Allstate satisfies this burden, the burden again shifts to Appellants to prove that Allstate's proferred reason was pretextual. <u>Id.</u> Appellants may also prove that age was a motivating factor for their terminations. <u>Keelan v. Majesco Software, Inc.</u>, 407 F.3d 332, 340 (5th Cir. 2005). "The plaintiff retains the ultimate burden of persuasion throughout the case." <u>Faruki v. Parsons S.I.P., Inc.</u>, 123 F.3d 315, (citing

Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

Allstate terminated Appellants after a multidisciplinary team composed of lawyers, corporation security personnel, and claims employees completed a nationwide investigation that revealed that the employees engaged in the practice of altering the footnote date when they entered their activities in the CDS, or, in the case of Wells and Johnston, they knew of the practice but did nothing to stop it. Allstate undertook the investigation because it considered the practice to be a serious threat to the integrity of its claims files.[3]

Assuming arguendo that Appellants have established a prima facie case,[4] they have failed to show that Allstate's legitimate

---

[3] Indeed, Allstate was forced to settle the earlier lawsuit, mentioned supra, after Vines admitted to having altered the claims files, because the alterations called into question the integrity of Allstate's files, not to mention the integrity of Allstate's employees.

[4] The district court properly dismissed Appellant Ladd on these grounds because she was thirty-nine years old when she was terminated, and the ADEA only applies to individuals who are at least forty years of age. 29 U.S.C. § 631(a). It did not decide whether Appellant Wells established a prima facie case, where she was replaced by someone who was "insignificantly" younger, because it found that Appellants cannot show that Allstate's legitimate reason for their termination was merely a pretext for discrimination. The parties do not dispute that the remaining Appellants have established a prima facie case.
To establish a prima facie case, each Appellant must show that: (1) he is a member of a protected class; (2) he was qualified for the position that he held; (3) he suffered an adverse employment action; and (4) he was replaced by someone younger. See Meinecke v. H&R Block of Houston, 66 F.3d 77, 83

reason for their terminations is pretexual or that age was a motivating factor for their terminations. Appellants' arguments that Allstate sanctioned the practice fail. First, Appellants' argument that employees regularly backdated handwritten entries prior to the implementation of the CDS is irrelevant, as the computer system was designed to capture the date on which entries were actually entered. Second, Appellants' argument that Allstate failed to provide written or verbal instructions that altering the date was against company policy is counterintuitive, as Allstate did not learn of the practice until Vines described the procedure in an earlier lawsuit. Third, Appellants' argument that Allstate allowed the practice to continue for months after learning of it is misplaced, as Allstate promptly initiated its several months long investigation to determine the prevalence of the problem and what actions it would take in response. Finally, Appellants are inaccurate in stating that Allstate did not prosecute Appellants nor report to the Mississippi Insurance Commissioner or Attorney General that the reason for Appellants' termination was the falsification of documents, as Allstate has discretion to determine whether it will seek prosecution in a given situation, and it did report the transgressions to the Insurance Commissioner and the Attorney General. Clearly, Allstate did not sanction the Appellants' practice.

---

(5th Cir. 1995).

Appellants also argue that the closing of Allstate's Little Rock, Arkansas office in March of 2002 required Allstate to relocate the younger employees from that office to the Jackson, Mississippi office. Appellants offer statistics to support their claim: they assert that prior to their lawsuit, Allstate hired ten adjusters, eight of whom were under the age of forty, and two of whom were forty years or older. They claim that after they filed their lawsuit, Allstate hired four adjusters over the age of forty and seven under the age of forty. These statistics are not probative of discriminatory intent because they are devoid of context. See EEOC v. Texas Instruments, 100 F.3d 1173, 1185 (5th Cir. 1996) ("The probative value of statistical evidence ultimately depends on all the surrounding facts, circumstances, and other evidence of discrimination.")

Appellants further argue that similarly situated younger employees were treated differently from them. Even if these employees were younger than Appellants,[5] they are not similarly situated to them: unlike these employees, Appellants engaged in the systematic practice of altering footnote dates. The audit revealed that some claims personnel had only altered the footnote date once, occasions that were attributable to an instance when

---

[5] At least two of four employees identified by Appellants as "similarly situated" are in the protected class: Marguerite Lowery, a Jackson, Mississippi employee, was 41 at the time of Appellants' terminations; Renee Honda, the Colorado employee, was 47.

Vines showed them how to change the footnote date. These employees were not terminated because they were not managers and did not engage in the practice. The audit revealed that a Colorado employee may have engaged in the practice three times, but Allstate determined she had inadequate understanding of the system to have intentionally altered the footnote date.

B. Fair Labor Standards Act

Appellants Anthony, Parham, Peoples, Johnson, Cheatham, McCoy, and Kitch sought overtime compensation from Allstate under the FLSA for hours worked in excess of forty hours per week. In granting Allstate's motion for summary judgment on this claim, the district court held that these Appellants were employed in an administrative capacity and thus exempt from 29 U.S.C. § 207(a)(1)'s requirement of overtime compensation for employment in excess of forty hours.

"The decision 'whether an employee is exempt under the [FLSA] is primarily a question of fact which must be reviewed under the clearly erroneous standard . . . .'" Smith v. City of Jackson, Miss., 954 F.2d 296, 298 (5th Cir. 1992) (quoting Blackmon v. Brookshire Grocery Co., 835 F.2d 1135, 1137 (5th Cir. 1988)). However, "[t]he ultimate decision whether an employee is exempt from the FLSA's overtime compensation provisions is a question of law." Lott v. Howard Wilson Chrysler-Plymouth, 203 F.3d 326, 331 (5th Cir. 2000) (citing Dalheim v. KDFW-TV, 918

F.2d 1220 (5th Cir. 1990)). Thus, we review the district court's ultimate conclusion <u>de novo</u>. We construe FLSA exemptions narrowly; and the burden of proof lies with the employer. <u>Vela v. City of Houston</u>, 276 F.3d 659, 666 (5th Cir. 2001) (citations omitted).

The FLSA excludes from the requirement those employees working in bona fide executive, administrative, or professional capacities. 29 U.S.C. § 213(a)(1). Because it is undisputed that Appellants each earned a salary of at least $250 per week, the Department of Labor's (DOL) "short test" for determining administrative employee status applies to Appellants.[6] 29 C.F.R.

---

[6] The FLSA delegates regulation-making to the Department of Labor. Although the regulations were revised after the pertinent events occurred, the revision did not change the criteria for the administrative exemption. The prior regulations are cited by the parties, and herein, as well.
  The "short test" is found within § 541.214. It reads, in pertinent part:

> (a) [Section] 541.2 contains a special proviso including within the definition of "administrative" an employee who is compensated on a salary or fee basis at a rate of not less than $250 per week exclusive of board, lodging, or other facilities, and whose primary duty consists of either the performance of office or nonmanual work directly related to management policies or general business operations of the employer or the employer's customers, or the performance of functions in the administration of a school system, or educational establishment or institution, or of a department or subdivision thereof, in work directly related to the academic instruction or training carried on therein, where the performance of such primary duty includes work requiring the exercise of discretion and independent judgment. Such a highly paid employee having such work as his or her primary duty is deemed to meet all the requirements in § 541.2(a) through (e). If an employee qualifies for exemption under

11

§ 541.214. The district court noted that Appellants admitted in court that they met part of the test in that their duties consisted primarily of "office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers." See id. However, they now dispute this. They also contest the district court's finding that they exercised discretion and independent judgment in their respective positions. See id.

We find that the district court's findings are not clearly erroneous. The district court gathered historical facts, see Dalheim, 918 F.2d at 1226, that is, how the employees spent their working time, Bratt v. City of Los Angeles, 912 F.2d 1066, 1068 (9th Cir. 1990), from Appellants' depositions. It noted that, although Appellants had different job titles, they were all adjusters who handled liability claims for bodily injury and damage to property, and that Appellants seemed to agree that the work performed by each was substantially the same. The district court organized Appellants' duties into several categories.[7]

---

this proviso, it is not necessary to test the employee's qualification in detail under § 541.2(a) through (e). 29 C.F.R § 541.214.

[7] These categories include: (1) setting and/or adjusting reserves based upon the adjuster's preliminary evaluation of the case, (2) investigating issues that relate to coverage and determining the steps necessary to complete a coverage investigation, (3) determining whether coverage should be approved or denied, with only denials of coverage subject to supervisory approval, (4) conducting investigation to determine

Next, the district court made findings "based on inferences drawn from historical facts, such as whether a particular job required 'skill and initiative' . . . ." Dalheim, 918 F.2d at 1226. The district court was correct in concluding that these categorized duties constitute Allstate's administrative operations; they directly relate to Allstate's management policies or general business operations, as distinguished from production. See 29 C.F.R. § 541.205(a). An insurance company's product is its policies, and Appellants' duties did not include writing and selling insurance. See Reich v. John Alden Life Ins. Co., 126 F.3d 1, 9 (1st Cir. 1997). Indeed, as insurance company adjusters, Appellants advised the management, represented Allstate, and negotiated on Allstate's behalf; these duties are administrative in nature. See 29 C.F.R. § 541.205(b) (defining "administrative operations"); Op. Dep't of Labor FLSA2002-11.

Second, despite Appellants' claim that since Allstate

---

liability, including making credibility determinations regarding interviewees, (5) consulting local traffic and negligence laws and applying those laws to the facts of the claim to determine who was at fault, (6) determining whether a claim has subrogation potential, (7) identifying underwriting risks, (8) identifying potentially fraudulent claims, (9) determining liability and apportioning fault to parties in comparative negligence cases, (10) determining the value of claims based upon many factors such as the claimant's credibility, age, gender, together with any physical injury or property damage, the reputation of the attorney representing the claimant, litigation costs, and venue, and (11) negotiating final settlement with the claimant(s) attorney that was binding upon Allstate.

implemented a new system of practices and procedures called "Core Claim Process Redesign" ("CCPR") they no longer exercised independent judgment, the district court determined that their job duties undoubtedly required independent judgment because they considered and evaluated alternative courses of conduct and took action or made a decision after considering the various possibilities. See 29 C.F.R. § 541.207(a). Appellants claim that CCPR relegated them to nothing more than data input clerks. Specifically, they state that they are checked in their determination of liability by having to adhere to a liability matrix, that they are limited in their ability to negotiate by having to adhere to computer software and the CCPR manual, that they may not set reserves without consulting with a computer program, and that they must seek approval before settling a claim. We are unpersuaded by these arguments. As correctly determined by the district court, the requirement that Allstate adjusters must consult with manuals or guidelines does not preclude their exercise of discretion and independent judgment. See McAllister v. Transamerica Occidental Life Ins. Co., 325 F.3d 997, 1001 (8th Cir. 2003). In addition, "[t]he decision made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action." 29 C.F.R. § 541.207(a). The district court determined that, in seeking approval, Appellants were expected to make a recommendation based on their experience and knowledge of

14

the case and to explain their reasons for recommendation. Appellants exercised discretion in determining coverage, conducting investigations, determining liability and assigning percentages of fault to parties, evaluating bodily injuries, negotiating a final settlement, setting and adjusting reserves based upon a preliminary evaluation of the case, investigating issues that relate to coverage and determining the steps necessary to complete a coverage investigation, and determining whether coverage should be approved or denied. The district court correctly determined that Appellants exercised independent judgment as Allstate adjusters.

The facts establish that Appellants' duties were directly related to and were important to Allstate's management policies and its general business operations, and required Appellants' exercise of discretion and independent judgment. Appellants qualify for the administrative exemption. Thus, they are not entitled to overtime compensation.

C. Intentional Infliction of Emotional Distress

Under Mississippi law, the standard for IIED "is very high: the defendant's conduct must be 'wanton and wilful and [such that] it would evoke outrage or revulsion.'" Hatley v. Hilton Hotels Corp., 308 F.3d 473 (5th Cir. 2002) (quoting Leaf River Forest Prods., Inc. v. Ferguson, 662 So. 2d 648, 659 (Miss. 1995)). "A Mississippi federal court defined the necessary severity as acts so outrageous in character, and so extreme in

15

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Speed v. Scott, 787 So. 2d 626, 630 (Miss. 2001). Employment disputes do not ordinarily sustain claims for IIED. Peques v. Emerson Elec. Co., 913 F. Supp. 976, 982-83 (N.D. Miss. 1996) ("Recognition of a cause of action for [IIED] in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time.") (citations omitted)).

Appellants point to the following facts surrounding their terminations in asserting their IIED claim: Allstate hired an armed security guard to be present outside the hotel conference room where Appellants were terminated; they were spoken to in a disrespectful tone; they were not immediately allowed to retrieve their belongings; an Allstate employee told another insurance company about the firings; and yet another Allstate employee told an attorney about the firings. We find that Allstate's actions do not rise to the level of outrageous conduct. Although Appellants maintain that they were wrongfully accused of falsifying company documents, the facts belie their belief. Their claim for IIED cannot stand.

D. Cross Appeal on Rule 54(d)

Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that "costs, other than attorneys' fees shall be allowed as of course to the prevailing party unless the district court

16

otherwise directs . . . ." FED. R. CIV. P. 54(d)(1). We review the district court's denial of the award for abuse of discretion. Schwarz v. Folloder, 767 F.2d 125, 131 (5th Cir. 1985).

There is a strong presumption under Rule 54(d)(1) that the prevailing party will be awarded costs. Id. at 131 (citing Delta Air Lines, Inc. v. August, 450 U.S. 346, 352 (1981)). Thus, when a trial court denies costs, "'it should state reasons for its decision.'" Id. (quoting Walters Roadway Express, Inc., 557 F.2d 521 (5th Cir. 1977)). The district court failed to state a reason for its decision to upset Rule 54(d)'s presumption.

III. Conclusion

We AFFIRM the district court's grant of summary judgment on all three claims. We VACATE and REMAND solely for a redetermination of whether costs should be awarded to Allstate.